[No. 6905.]

## McClelland v. The People.

1. **Criminal Law—Subornation of Perjury — Evidence — To** convict of the crime, the people must show that perjury was in fact committed. It must appear not only that the alleged false testimony was given, and that it was false, but also that it was material. It must be shown to have had a legitimate tendency to prove or disprove some fact material to the matter being investigated. The record of the case in which perjury is alleged to have been committed must be produced, and the people must display so much of the testimony given in that hearing as shows clearly the materiality of the testimony alleged to have been falsified.—(540-544)

The record examined, and held that the evidence was insufficient to sustain a conviction.—(542-544)

2. **Delinquent Child—Contributing to Delinquency — To** contribute to juvenile delinquency, one or more of the various acts enumerated in the statute must be committed. Merely assisting a child, charged with delinquency, to violate the orders of the juvenile court by failing to appear therein, does not, necessarily, enter into or constitute any of the elements of the offense.—(544, 545)

*Error to Fremont District Court* — Hon. Lee Champion, Judge.

Mr. Edwin N. Burdick and Mr. George J. Humbert for plaintiff in error.

Hon. John T. Barnett, attorney general, Mr. James Grafton Rogers, assistant attorney general, and Mr. Eugene A. Moran, for the people.

Mr. Justice White delivered the opinion of the court:

R. D. McClelland, plaintiff in error, was convicted of subornation of perjury by procuring one Charlie Crowder to commit perjury upon the trial of the former in the county court of Fremont county, upon an information charging him with the offense of contributing to, and encouraging juvenile delinquency.

After a motion for a new trial was interposed and overruled, the court pronounced judgment, sentencing the defendant to serve a term in the state penitentiary, and he prosecutes this suit to reverse that judgment.

The alleged crime was based upon, and grew out of, the following facts: February 15, 1909, a girl, aged fifteen years, named Nellie Hart, was charged, in the county court of Fremont county, with being a delinquent and incorrigible child under the statute. She was thereupon taken, in company with her mother, before the judge of said court, who continued the cause until February 20th, and ordered the girl to appear on that date for trial. The girl and her mother had shortly before moved into, and were then residing in, a rooming house in Canon City, owned by defendant. February 18th they called upon defendant and consulted him relative to Nellie's approaching trial, the mother expressing herself averse to the notoriety such trial would necessarily occasion. The defendant thereupon suggested, that Nellie be sent out of the jurisdiction of the court as the easiest way of avoiding the publicity of the trial, and the consequent notoriety attending the same. The plan suggested was agreed upon, and defendant, with an effort to conceal his actions, took Nellie, accompanied by her mother, to the depot, procured a ticket to Emporia, Kansas, signing the name of "Nellie Marsh" as the purchaser thereof, checked Nellie Hart's trunk to that point, placed her aboard the night train, and supplied her with the ticket upon which she traveled to Emporia, where she took up her abode with some relatives of defendant.

Nellie Hart, failing to appear in the county court upon February 20th, the date set for her trial, an investigation was made, McClelland's connection with her disappearance was disclosed, and he was there-

upon formally charged in the county court with contributing to her delinquency. Upon that charge McClelland was tried, and called Crowder as a witness in his defense, who testified, in substance, that the former had no part in the departure of Nellie Hart, and was not present at the time, and had nothing whatever to do therewith; that he, Crowder, and not McClelland, had done the several things, assisting her to leave Canon City and go to Emporia, which it was charged in the information McClelland in person had done. This is the alleged perjured testimony, and defendant is said to have suborned Crowder to give it.

To constitute the crime of subornation of perjury, one party must procure another to commit perjury, and the party thus procured must actually commit the crime of perjury; and to support a conviction therefor, it is essential to allege and prove that perjury has, in fact, been committed by the party so procured.—2 Wharton's Crim. Law, sec. 1329; *Smith v. State*, 125 Ind. 440, 443.

It cannot be committed, unless the person taking the oath willfully and corruptly swears to what is false in a matter material to the issue or point in question.—Sec. 1270, Mills' Ann. Stats.; 2 Wharton's Crim. Law, sec. 1330.

It is equally essential upon the trial to prove the facts showing the materiality of the false statements or testimony. The proof should show how and wherein the matter upon which the perjury is assigned was material to the issue or point in question. The rule is aptly stated in *Commonwealth v. Pollard*, 12 Met. 225, 229, where it is said: "The oath must not only be willfully false, but it must be material to the issue. For if it be of no importance and immaterial, though false, it is not perjury, because it does not affect the issue; and it lies on the prosecution to

prove that it is thus material.'' And in Greenleaf on Evidence, vol. 3, sec. 197, as follows: ''Where the perjury is assigned in the evidence given in the cause, it will be necessary, not only to produce the record, but to give evidence of so much of the state of the cause, and its precise posture at the time of the prisoner's testifying, as will show the materiality of his testimony.'' The evidence constituting the alleged perjury must have been material to the matter then being investigated, or the point in question before the court, and it devolves upon the people, upon trial, to show its materiality. While the test of materiality does not require the false testimony to be directly pertinent to the main issue or point in question, it does require that it have a legitimate tendency to prove or disprove some material fact in the chain of evidence; that is, that it be directly or circumstantially material. It is equally true that its materiality must be established by evidence, either direct or circumstantial, and cannot be left to presumption.— *Nelson v. State,* 32 Ark. 192; *State v. Aikens,* 32 Iowa 403; *Mackin v. People,* 115 Ill. 312, 327.

The rule stated in *Dilcher v. State,* 39 Ohio St. 130, 133, and adopted by this court in *Thompson v. The People,* 26 Colo. 496, 502, is as follows: ''A witness may be guilty of perjury, not only by swearing corruptly and falsely to the fact which is immediately in issue, but also to any material circumstance which legitimately tends to prove or disprove such fact; or to any circumstance which has the effect to strengthen and corroborate the testimony upon the main fact.''

These rules of law are applicable to the case at bar, and applying them to the facts, it is clearly evident the verdict and judgment herein cannot be upheld. The falsity of Crowder's testimony, and his knowledge thereof, may be conceded, yet there is an

entire absence of evidence showing, or tending to show, the materiality of the alleged false matter testified to by him upon the issue or point in question, in the case in the county court, wherein such testimony was given. The issue in that case was as to the delinquency of Nellie Hart, and McClelland's acts in connection therewith. The words a "delinquent child" are defined in sec. 586, Rev. Stats., and in order to be guilty of contributing to juvenile delinquency, one must encourage, aid or assist a child coming within the terms of the statute, to commit one or more of the various acts therein mentioned. —Sec. 598, Rev. Stats. The information for contributing to juvenile delinquency could not, whatever its allegations, be broader than the statute upon which it was based. While it is true that information, after alleging the specific offense of contributing to juvenile delinquency, also alleges that defendant caused Nellie Hart to violate the orders and directions of the juvenile court by failing to appear in said court on the 20th day of February, 1909, yet her failure in that respect, and defendant's actions relative thereto, do not necessarily enter into, or constitute any of the elements of the offense, and the evidence in the case at bar wholly fails to show their relevancy. Neither the information in the county court, except inferentially, nor the one at bar, alleges, nor does the proof here show, that the departure of Nellie Hart from Canon City, her failure to appear and be in court, or her visit in Emporia, in any wise caused her to be or become an incorrigible or delinquent child within the meaning of the law. Neither does the record show, that the alleged perjured testimony tended to prove or disprove, the fact which was at issue in the county court, nor does it appear that it had the effect to strengthen or corroborate the testimony upon the main fact there at issue. In the case of *Thompson*

*v. The People, supra,* the perjured testimony assigned in the information was, that Thompson, upon the trial of one Cremar, upon the charge of having murdered one Myers, testified that he saw Myers hand someone a pistol at, or immediately prior to the time of the vital encounter. The prosecution was confronted with precisely the situation that confronted the prosecution in the case at bar. It was impossible in that case, as it is in this, to determine from the information alone, whether the false testimony was material to any issue in the trial, but there the prosecution met the situation by introducing so much of the testimony taken in the murder trial, where the perjury was alleged to have been committed, as to show the materiality of the false testimony. The People in that case introduced evidence which had been given in the murder trial, that Cremar, as an officer, did the shooting in attempting to take Myers, who was resisting arrest; that Myers struck Cremar several times, and finally got him by one hand and reached back as if to pull a pistol; that one Ryan had sworn, that immediately before the shooting by Cremar, he saw Myers pull from his hip pocket a revolver and hold it up; that Thompson had testified that he saw Myers and Cremar when they came out of the building, and saw Myers hand a pistol to some one and say: "Here, take this." The materiality of such testimony to the point in issue in the murder case, is readily apparent. The fact of the deceased having, or not having, a revolver at the time of the encounter was a material fact upon the issue of self-defense; and hence, evidence tending to prove or disprove that fact, was essentially material.

It is true the acts covered by Crowder's testimony might have had a legitimate tendency to prove or disprove a material fact in the contributing to

juvenile delinquency case, but in order to show in the case at bar, that it was material in that case, it was essential in this, to produce the record of that case, and so much of the evidence given therein as to show clearly the materiality of the false testimony. This was not done in the case at bar. From the record here the only thing we know of that case, is that an information charging juvenile delinquency, was filed and that Crowder in the trial of the case upon that information, gave the alleged false testimony. This was wholly insufficient. The existence of a fact cannot be established by simply showing that it may or may not have existed; nor can it be said the materiality of the alleged false testimony was established, when it appears that under some circumstances such testimony may have been material, and, under other circumstances, it could not have been.—*Perry v. Ah Sing,* 95 Cal. 657; *Young v. The People,* 134 Ill. 37; *Bledsoe v. State,* 64 Ark. 474; *Nelson v. State, supra; State v. Aikens, supra.*

Suppose in the information upon which the defendant was tried in the county court, the specific offense of contributing to juvenile delinquency was charged, and it was also alleged therein that defendant caused Nellie Hart to refuse to sign a note, or caused her to do some act not criminal in itself, and a witness called, testifies falsely concerning the acts of defendant relative thereto. How can it be said that such false testimony was material to the matter at issue or point in question? The evidence herein, on behalf of the people, not only fails to show the materiality of the alleged false testimony, but clearly discloses its immateriality. Moreover, it shows that the sole purpose of Nellie Hart in leaving Canon City and going to Emporia, was to avoid the notoriety of a trial. Furthermore, such departure and visit

was with the full consent and approval of her mother, the natural guardian of the child, and into whose custody and control the court had permitted her to remain. The theory of the prosecution was, that inducing Nellie Hart to disobey the order of the court and leave its jurisdiction, was an act of juvenile delinquency, but that theory can in no wise affect the matter. The legislature alone has the power to define criminal offenses, and designate the acts constituting them. It has not made the character of disobedience here under consideration, a crime, or an element of the offense of juvenile delinquency, and to show its materiality in the proof of the charge, evidence was necessary. While it was not essential that defendant should have actually contributed to juvenile delinquency, to make false testimony corruptly given upon his trial therefor, perjured, it was essential that he be charged with the offense, and the particular testimony claimed to have been perjured have some tendency, either directly or indirectly, to support the charge.

Inducing the girl to violate the order of the court was a serious interference with the administration of justice, and the person or persons responsible therefor should have been punished as provided by law; but the law does not permit the conviction of a person of one crime by showing that such person is guilty of another and different crime, or is accessary to a contempt of court. It may be the law should make whatever is sworn falsely and deliberately in open court, the subject of perjury, or, at least, as is done in many jurisdictions, affix a penalty for intentional false swearing, without regard to the materiality of the testimony, yet it has not done so in this state; and we, not being empowered to legislate, must apply the law as we find it. The facts were undis-

(35)

puted and the court, as requested, should have instructed the jury to acquit the defendant. The judgment is, therefore, reversed.          *Reversed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE MUSSER concur.