No. 12,917.

STONEBRAKER *v.* THE PEOPLE.
(4 P. [2d] 915)

Decided November 2, 1931.

Mr. OSCAR L. CHAPMAN, Mr. PAUL D. SHRIVER, for plaintiff in error.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. WALLACE S. PORTH, Assistant, for the people.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

Plaintiff in error was convicted of perjury. The information charges that in a civil proceeding in Las Animas district court wherein John Aiello was plaintiff and General Agency Company, Inc., was defendant, he wilfully, knowingly, corruptly and falsely testified that one Nelson B. Cook, Special Deputy State Bank Commissioner in charge of International State Bank of Trinidad, had not paid certain insurance premiums. Motions for a directed verdict of not guilty were interposed by the defendant at the close of the people's testimony and at the close of all the testimony and denied, and after motion for new trial was overruled defendant was sentenced to a term in the penitentiary.

It is argued by the defendant that the testimony charged to have been false was in fact true, and that, true or false, it was immaterial. These assertions require an examination of the issues in the civil action so far as they can be ascertained from the record before us. The people offered, and there were received in evidence, the complaint, answer and replication in that proceeding. The complaint alleges, in the first cause of action, that prior to October, 1927, the plaintiff effected several policies of insurance with the defendant company, and gave instruction for their renewal; that the same were renewed, $300 paid on account of the premiums thereon and on policies thereafter to be obtained or renewed; that the defendant company thereafter (no date is alleged) wrongfully, unlawfully, and with intent to cheat, wrong and defraud the plaintiff caused the renewed poli-. cies to be cancelled on the ground of nonpayment of premiums, whereby the plaintiff was injured in his credit and reputation. The second cause of action alleges the issuance of a policy to the plaintiff by defendant company on March 28, 1927, payment of the $7 premium, and its wrongful cancellation on June 18, 1928, to the plaintiff's damage. The answer admits the issuance of the

policies as alleged, and the payment of the $300 and $7 premiums, but alleges the $300 was applied to the plaintiff's open account of $1,055.56, and that the policies mentioned in the first cause of action were rightfully cancelled for nonpayment of the premiums, and that the policy mentioned in the second cause of action was cancelled by the issuing company upon proper grounds and the pro rata unearned premium of $4.30 credited to the plaintiff's open account. A cross-complaint, alleging an indebtedness from plaintiff to defendant company for a commission for negotiating a loan, was filed, but it is not necessary to discuss it. The replication and answer to the cross-complaint consisted of general denials.

The issues thus made up may be said to be simple: Were the policies described in the complaint rightfully cancelled, and if they were not, did the plaintiff suffer any damage thereby? And those being the issues, was the testimony charged to have been perjured false "in a matter material" thereto? §6776, C. L. 1921.

The answer is to be found by a comparison of the pleadings in the civil action and the information. From that comparison we find that the policies alleged to have been wrongfully cancelled to the plaintiff's damage are not the policies described in the information, do not cover the same buildings or property, and were not issued at the same times. The policies described in the complaint and those described in the information were both written in the name of Aiello, but there the similarity ceases. There is no allegation in the complaint concerning the policies mentioned in the information, and no mention in the information of the policies described in the complaint. It would seem certain, therefore, that it cannot be held that the payment or nonpayment, by the State Bank Commissioner, of the insurance premiums on the policies described in the information could have any materiality to the issues in the civil case.

But eight folios of the testimony offered in the civil action are before us, and of these two suffice to set out

the evidence charged to be false. That testimony, and it should be borne in mind that it does not refer in the least to the policies in controversy in that case, is as follows: "Q. And didn't you then take the matter up with Mr. Cook, the receiver, and Mr. Cook either paid you, or agreed to pay you for these policies if you would continue them in force? A. He did not. Q. And did not pay you? A. He paid some insurance to us, on a number of properties. Q. Now, I am asking you about these policies? A. These policies were never paid for. Q. Did Mr. Cook pay you anything on these policies? A. He did not. Q. Are you positive of that? A. I am positive of it." Elsewhere it appears that Mr. Cook did, on February 23, 1928, pay $203.05 to the defendant company, but there is nothing to connect this fact with any issue raised by the pleadings or having any relevancy thereto. The payment of that amount, even if credited to the balance of Aiello's open account on that date, as shown by people's exhibit F, would still have left Aiello so largely indebted as to have made cancellation of the policies proper, assuming the correctness of exhibit F, offered by the people, and the proper application of the $307 credits, which is not here questioned.

██ ██ Perjury is wilfully and corruptly swearing falsely to a matter material to the issue or point in question. §6776, C. L. 1921; *McClelland v. People,* 49 Colo. 538, 540, 113 Pac. 640, 32 L. R. A. (N. S.) 1069. The fact falsely sworn to need not, it is true, be immediately in issue, for a witness is guilty of perjury if he swears falsely to any material circumstance which legitimately tends to prove or disprove such fact, "or to any circumstance which has the effect to strengthen and corroborate the testimony upon the main fact." *Thompson v. People,* 26 Colo. 496, 502, 59 Pac. 51. There is an entire lack of testimony in this record to show the materiality of the alleged perjured evidence, and that must be shown. As was said in *Commonwealth v. Pollard,* 12 Metc. 225, 229, cited with approval in *McClelland v. Peo-*

*ple, supra,* "The oath must not only be wilfully false, but it must be material to the issue. For if it be of no importance and immaterial, though false, it is not perjury, because it does not affect the issue; and it lies on the prosecution to prove that it is thus material." And at page 541 of the McClelland case: "The evidence constituting the alleged perjury must have been material to the matter then being investigated, or the point in question before the court, and it devolves upon the people, upon trial, to show its materiality. While the test of materiality does not require the false testimony to be directly pertinent to the main issue or point in question, it does require that it have a legitimate tendency to prove or disprove some material fact in the chain of evidence; that is, that it be directly or circumstantially material. It is equally true that its materiality must be established by evidence, either direct or circumstantial, and cannot be left to presumption." Applying these rules to the facts in the case at bar, even conceding the falsity of the defendant's testimony, makes it clear the verdict and judgment cannot be upheld, for logic forbids that a transaction with a stranger concerning other matters be held to have a material bearing upon Aiello's credit and standing in his community.

That the defendant was guilty of wilful false swearing appears to us to be a matter of doubt. From all the testimony it seems that Aiello owned the building in which the International State Bank did business, but that some time before its failure he gave a deed thereto to the bank which the bank commissioner found among its records when his deputy took charge. The defendant says that at that time Aiello had not paid the premiums due on policies covering the bank building, that the insuring companies desired to cancel them, and that the deputy bank commissioner, Cook, wanted to have the premises insured in his favor. The policies were in Aiello's possession and he declined to surrender them and refused the registered letters containing the cancellation notices.

In this situation the defendant, instead of issuing new policies to Cook, which he said he did not want to do because of the uncertainty of the term, placed endorsements on his copies of the policies accepting notice of the bank commissioner's title and contracting that in the event of loss payment should be made to the commissioner as his interest might appear. For the placing of these endorsements he made a charge against the commissioner equal to the amount of the premiums earned between the dates of the issuance of the policies and the ceasing of the commissioner's interest, but he denied that he ever considered payment of this charge by the commissioner as being for the policies or on Aiello's account, but simply as compensation to him for keeping the premises insured for the commissioner's benefit. Plausibility is lent to this version of the facts when it is considered that the defendant might well have issued new policies to the commissioner and that Cook testified that his only desire was to protect the commissioner's interest in the building and that he had no intention to pay Aiello's premiums and had so informed the defendant.

It may be, as we said in *McClelland v. People, supra,* that the law should make whatever is falsely sworn in open court the subject of perjury, or affix a penalty of some kind for intentional false swearing without regard to materiality, yet the legislature has not done so, and we must apply the law as we find it.

The trial court should have instructed a verdict for the defendant, and the judgment is therefore reversed with instructions to discharge him.