## LUTHER THOMPSON v. STATE.

No. A-6479. Opinion Filed June 13, 1928.
(268 Pac. 314.)

H. A. Stanley and J. B. Ogden, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as the defendant, was informed against by the county attorney of Carter county, Okla.; the information, omitting the caption, being as follows:

"Now comes F. M. Dudley, the duly qualified and acting county attorney in and for Carter county, state of Oklahoma, and gives the district court of Carter county, state of Oklahoma, to know and to be informed that Luther Thompson did, in Carter county, and in the state of Oklahoma, on or about the 16th day of February in the year of our Lord, one thousand, nine hundred and twenty-six, and before the presentment hereof, commit the crime of perjury in the manner and form as follows, to wit:

"That Luther Thompson, in the county and state aforesaid, on the day and year aforesaid, in the county court of Carter county, Okla., sitting at Wilson, Hon. A. J. Hardy, the regular elected, qualified, and acting judge for said county then and there presiding and acting, wherein the case of the State of Oklahoma v. U. S. Connelly, charged with selling intoxicating liquor, being No. 180 on said court docket, was then and there being tried and heard before the court aforesaid, and that the said Luther Thompson was then and there produced as a witness in said case on behalf of the state, and was then and there duly sworn to testify truly and the truth to tell in said case by Fay Wallace, the duly elected and qualified court clerk of Carter county, Okla., who was then and there duly authorized and empowered to administer oaths in such cases, and administer said oath in that case, and that then and there it became a material question in said case whether the said Luther Thompson bought intoxicating liquor from the said U. S. Connelly, and that then and there the said Luther Thompson, being a witness duly sworn and testifying as aforesaid, did then and there knowingly, willfully, unlawfully, falsely, corruptly, feloni-

ously, and contrary to said oath, testify, depose, and say, in substance and effect, that he did not buy intoxicating liquor from the said U. S. Connelly, whereas in truth and in fact the said Luther Thompson did buy intoxicating liquor from the said U. S. Connelly, and in all particulars the testimony, statements, and declarations so testified and deposed unto by the said Luther Thompson were then and there material matter in and to the said case of State of Oklahoma v. U. S. Connelly, charged with selling intoxicating liquor, as aforesaid, and were then and there not true, but were false and corrupt, and were then and there by said Luther Thompson not believed to be true, but were then and there believed and known by said Luther Thompson to be false; contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the state.

"F. M. Dudley, County Attorney."

Defendant demurred to the information, which demurrer was by the court overruled, and defendant duly excepted. The defendant was tried upon the information, and convicted and sentenced to serve a term of five years at hard labor in the state penitentiary at McAlester. Motion for new trial was filed and overruled; exceptions duly saved; and sentence imposed on the defendant. From the judgment and the verdict defendant appeals.

Fay Wallace was called and testified:

That she was court clerk in February, 1926, and as such court clerk was clerk of the county court. That the county court was in session on the 16th day of February, 1926, Judge A. J. Hardy presiding. On February 16, 1926, there was a case pending, State of Oklahoma v. U. S. Connelly, No. 180, charged with selling intoxicating liquor. The charging part of the information was "selling intoxicating liquor to Luther Thompson and Joe Carnes." Luther Thompson was called as a witness in the case, and was sworn to tell the truth. "I administered the oath to Luther Thompson. I was authorized by law to administer oaths. That Luther Thompson to whom I

administered the oath is the same Luther Thompson that is defendant here."

The state then offered to introduce Exhibit A, which was alleged to be a copy of the information upon which U. S. Connelly had been tried. Defendant objected, and the objection was overruled and exceptions duly saved.

Florry Cunning was called as a witness in behalf of the state and testified she was court reporter on February 16, 1926; that she reported the testimony in the case styled State of Oklahoma v. U. S. Connelly, No. 180, charged with selling intoxicating liquors. The Luther Thompson called as a witness in case No. 180 is the same Luther Thompson in this case. "I am able at this time to read my notes taken in the trial of State of Oklahoma v. U. S. Connelly, No. 180." She read the questions and answers as follows:

"Q. What is your name? A. Luther Thompson.

"Q. Where do you live, Luther? A. Healdton, Okla.

"Q. How old are you? A. I will be 23 in March.

"Q. Did you go with Joe Carnes last August, 13th day of August, 1925, to any place? A. I did.

"Q. Where? (Counsel for the defendant objected; the court overruled his objection, and defendant duly excepted.)

"By the Court: Go ahead. Give him his exceptions.

"Q. Where? A. South of Healdton.

"Q. What did you do when you got down there? A. Well, I went down there.

"Q. Just what did you do? Did you buy anything? A. Yes, sir.

"Q. What was it? A. Mostly whisky.

"Q. How much? A. Quart.

"Q. Who from? A. Well, I don't know for sure. I don't know.

"Q. Tell the jury whether it was this defendant here (referring to U. S. Connelly)?

"Mr. Ogden: We object to this. He says he don't know.

"Q. Was it this man, this defendant (Referring to Mr. Connelly)? A. I don't think that was the man."

On cross-examination by Mr. Ogden:

"Q. You don't think that is him?

"A. No, sir."

Motion was then made by the defendant to strike the testimony of the witness on the ground that it was incompetent, irrelevant, and immaterial, proves no issue in the case. The motion was overruled, and defendant allowed an exception.

Hale Dunn, called as a witness, stated:

He was deputy sheriff on the 13th day of August, 1925. That he was present at the county court at Wilson on the 16th day of February, 1926, when the case of State v. U. S. Connelly was being tried. Prior to this, on or about August, 1925, "I saw Luther Thompson at U. S. Connelly's, right in front of the house, Joe Carnes was with him. They drove in toward the barn, and I waited, and, when they came back, I stopped them and searched them. They had a quart of whisky. They said they got it from U. S. Connelly, the old gentleman. I arrested them, and brought them into Ardmore and put them in jail. They stated they wanted to talk to the county attorney. I told them we wasn't after the boys so much, but I told them if they would tell who they bought it from I would dismiss the case. I brought them to the county attorney's office at their request. The assistant county attorney and myself was present when this statement was made. The statement was written out and read to these two men, and they signed it."

The statement, purported to be signed by the defendant and Joe Carnes, was offered in evidence and objected to by the defendant, which objection was overruled by the court and exceptions allowed. Witness further testified:

That he saw the defendant and Joe Carnes drive up to the Connelly house, and saw the old man get on the car. "I did not know who it was, but I saw him. I don't know who it was, but I asked these boys, and they both told me it was U. S. Connelly."

Marvin Shillings, a witness on behalf of the state, testified that he knew the defendants Luther Thompson and Joe Carnes; that he prepared the statement that had been offered in evidence purported to have been signed by Carnes and sworn to and approved by Thompson. His signature was attached before Mr. Shillings, and sworn to before him as notary public. The witness further testified that both of the defendants told him the facts incorporated in the affidavit of Joe Carnes; that Thompson said his statement would be the same.

At the close of the state's testimony the defendant demurred to the testimony offered in behalf of the state, and moved the court to discharge said defendant because the testimony was insufficient in law to sustain the allegations alleged in the information, and the state wholly failed to prove facts sufficient in law to constitute any violation of the laws of the state of Oklahoma.

The jury was excused from the courtroom and the demurrer was argued. The jury then returned to the courtroom, and the court entered an order overruling the demurrer, and allowed an exception. This is in substance all of the testimony introduced by the state. The defendant introduced no testimony.

The defendant has assigned six errors alleged to

have been committed by the court in the trial of his case; the errors alleged being as follows:

"(2) For the reason that the verdict was contrary to the law applicable to the case.

"(3) For the reason that the court committed error in overruling defendant's demurrer to the information.

"(4) Because of admission of incompetent, irrelevant, and immaterial testimony in the trial of the case over the objection of the defendant.

"(5) Because of errors in paragraphs 4 and 5 of the court's instructions to the jury, exceptions to which were saved and excepted to at the time by the defendant.

"(6) Because the instructions of the court as a whole did not fairly give the law applicable to the facts in this case."

The second, third, and fourth assignment of errors will be considered together, as they each in substance relate to the same question argued by the defendant. From the record it will be seen that Hale Dunn, a deputy who claims to have seen the defendant at the home of Connelly, and claims to have seen the man get on the car with the defendant and Joe Carnes, in which Joe Carnes was riding and go away, did not testify to the fact that it was U. S. Connelly. He stated positively that he did not know who it was.

The only other person claimed to have been present by the state, at the time the defendant is alleged to have been at the Connelly home, with Joe Carnes, who was not called as a witness in the case. Over the objection of the defendant, what was purported to be a statement of Joe Carnes made in the county attorney's office, and sworn to before the assistant county attorney, who prepared the statement, was introduced in

the record against the defendant on trial in this case, which was an ex parte statement of Joe Carnes, and shows upon its face by the language incorporated in the statement it must have been drafted by the assistant county attorney. This statement was not competent in the trial of the defendant in this case, it being a statement where the party making it was surrounded by the county attorney and sheriff, and not material to the allegations in this case, and being nothing more than an ex parte statement which would not be admissible. The objection of the defendant to the introduction of this statement should have been sustained.

A statement of the defendant, purported to have been signed by mark by the defendant, and sworn to before the assistant county attorney, was introduced. There is nothing in this statement to corroborate the charge in the information, as the information is based upon the false swearing of the defendant in a certain trial in which the state of Oklahoma was plaintiff and U. S. Connelly was defendant, No. 180, in the county court of Carter county. The state offered no testimony showing, or attempting to show, that the defendant in this case, at the time he was seen by the deputy sheriff, was acquainted with U. S'. Connelly. There is no testimony to show that the defendant in this case knew U. S. Connelly, or had ever seen him to know him. No testimony to show that prior to the time of the trial of U. S. Connelly in the county court that the defendant had ever met U. S. Connelly, or had an opportunity to know who he was, and the only statement upon which this prosecution is predicated is the statement of the defendant, when they asked the defendant if the U. S. Connelly on trial was the man from whom they bought the whisky, and the defendant answered, "I don't think that was the man." On cross-examination the

question was asked, "You don't think that is him?" and the defendant in this case answered, "No, sir."

The examination of the witness as shown by the record was not followed up; there being no effort made to show that the witness prior to the alleged purchase of the whisky was acquainted with U. S. Connelly, nor is there any testimony in the record to show that the defendant, when he said that he did not think U. S. Connelly was the man, knew he was testifying falsely. It is an elementary proposition that knowledge of the falsity of the alleged perjured testimony is essential, and an indispensable element to the claim of perjury. Corrupt motive is an indispensable element of perjury, and one having knowledge respecting the fact who testifies, however positively, only what he believes to be true, can be guilty of no crime, although he was mistaken. Pilgrim v. State, 3 Okla. Cr. 49, 104 P. 383. "To constitute perjury the statement made must not only be false, but the party making it must know it to be so." Cutler v. Ter., 8 Okla. 101, 56 P. 861; Nelson v. State, 32 Ark. 192.

This court, in the case of Shoemaker v. State, 29 Okla. Cr. 184, 233 P. 489, held:

"A conviction for perjury cannot be had upon proof alone that accused made contradictory statements under oath. The state must prove by extrinsic evidence that the statement upon which the prosecution is founded is false." Blakemore v. State, 39 Okla. Cr. 355, 265 P. 152.

In the view we take of this record it is not necessary to consider the fifth and sixth assignments of errors. We hold there is sufficient evidence to satisfy the requirements of law and to sustain the verdict and sentence.

The ex parte statement of Joe Carnes was in-

260

admissible, and the demurrer of the defendant to the evidence should have been sustained.

For the errors above stated, the case is reversed and remanded.

DOYLE, P. J., and EDWARDS, J., concur.