NELSON VS. THE STATE.

1. EVIDENCE: *Admissibility of.*
Oral evidence is admissible to prove what a witness testified at a coroner's inquest, if his testimony was not reduced to writing.

2. ———: *Materiality in perjury.*
The materiality of testimony alleged to be perjury, must be established by evidence and not left to presumption or inference. And when there is no dispute about the facts, its materiality is a question of law for the court to decide, and not of fact for the decision of the jury.

Nelson vs. The State.

3. PERJURY:

   To constitute perjury the false oath must be taken wilfully and corruptly.

4. SAME: *Indictment.*

   The indictment for perjury must allege the crime to have been committed feloniously.

·   APPEAL from *Drew* Circuit Court.

Hon. THEODORIC F. SORRELLS, Circuit Judge.

*Slemons,* for appellant.

*Attorney General,* contra.

ENGLISH, CH. J.:

Elias Nelson was indicted for perjury in the ·Circuit Court of Drew County, the indictment charging the offense in the manner following:

" Said Elias Nelson, in the county aforesaid, on or about the 9th day of August, 1876, did, on his examination as a witness, duly sworn by· R. C. Knox, a duly commissioned and acting justice of the peace, in and for Clear Creek Township in said county and State, to testify the truth, the whole truth and nothing but the truth, on an examination before a jury of inquest over the dead body of one Adam Pippin, in said county, and before said R. C. Knox, a justice of the peace as aforesaid, which justice of the peace had authority to administer·such oath, falsely and corruptly testify that one Henry Harris was at his (the said Elias Nelson's) house on Wednesday evening, August 9th, 1876, that he ate supper there at his house, that he, the said Henry Harris, was there from that time until bed time, and then went to bed there, the matters so testified being material in this, that he swore Henry Harris was at his (said Elias Nelson's) house, when the said Henry Harris at the said time was not at said Elias Nelson's house, and the testimony being wilfully and corruptly false, contrary to the statute and against the peace and dignity of the State," etc.

13

Nelson vs. The State.

On the trial, R. C. Knox, witness for the State, testified, that he was a justice of the peace. That on the 10th of August, 1876, he held an inquest over the dead body of Adam Pippin; had a regular jury empanelled and acted as coroner. The prisoner, Elias Nelson, was examined as a witness at the inquest, and swore that Henry Harris ate supper at his house on the evening of the 9th of August, was there at sundown, at bed time, and staid there all night. That they ate supper about dark, and went to bed about 8 or 9 o'clock, and that Henry Harris was there at the times above stated. The inquest was held in Drew County.

Defendant objected to oral testimony as to what he swore at the inquest.

The State then proved that no record of the testimony before the coroner's jury was kept, and the court admitted oral testimony and defendant excepted.

Neely King, witness for the State, testified that he was on the jury that held the inquest. That defendant was sworn as a witness, and stated that Henry Harris was at his house at sundown, and ate supper there on the 9th of August, 1876, and went to bed and staid there all night. That they ate supper between sundown and dark.

Evi Pippin, witness for the State, testified that she was at defendant's house on the evening and night of August 9th, 1876, there at sundown, at dark, ate supper there, and went to bed there; and that Henry Harris was not there at sundown, did not eat supper there, was not there at dark, nor at bed time, but came there late in the night, and staid there the balance of the night.

Andrew McNeely, witness for the State, testified, that he lived at defendant's on the 9th of August, 1876. Not in the same house, but in the yard. Was at his house at sundown, at dark

and at supper time, and Henry Harris was not there at bed time, or at any of the times above stated.

The above was all the evidence introduced on the trial:

On behalf of the State, the court instructed the jury as follows:

"*First.*—Perjury is the wilful and corrupt swearing, testifying or affirming falsely to any material matter in any court, matter or proceeding before any court, tribunal, body corporate or other officer having by law authority to administer oaths.

"*Second.*—If the jury believe from the evidence that the defendant Elias Nelson swore falsely to a material fact, as charged in the indictment, they must find him guilty as charged, and assess his punishment at not less than five nor more than fifteen years in the State penitentiary."

The defendant moved the court to give the following instructions:

"*First.*—Under the testimony in the case it does not appear that the statements made by the defendant before the coroner were material, and the jury must acquit.

"*Second.*—It was not material where Henry Harris was at supper time on the 9th day of August, 1876, and a false statement as to this, is not sufficient to convict the defendant.

"*Third.*—The defendant is entitled to the benefit of all reasonable doubts."

The court gave the third, refused the second, and refused to give the first instruction as asked, but modified it to read as follows:

Under the testimony in this case, if it does not appear from the testimony, that the statements made by the defendant before the coroner were material, then the jury must acquit.

After the jury had been out for some time, they returned into court, and announced that they could not agree, and being asked

by the court as to the difficulty, the foreman stated that it was as to the materiality of the testimony (of defendant before the coroner).

The court then, by consent of counsel, read to the jury sec. 1415 of Gantt's Digest. [The first instruction given by the court at the instance of the State, and copied above, is in the language of this section of the Digest.]

After reading this section, the court remarked to the jury that: "A man can be convicted for swearing falsely before a coroner as well as before any other officer, if the proof justifies it."

The jury again retired, and returned a verdict. finding the defendant guilty as charged in the indictment, and fixed his punishment at imprisonment in the penitentiary for five years.

He filed motions for a new trial and in arrest of judgment, which were overruled, and he took a bill of exceptions, setting out the evidence, instructions, etc.

He was sentenced in accordance with the verdict, and prayed an appeal, which was allowed by one of the judges of this court.

I. In the absence of the coroner, or if he reside more than twenty miles from the place where any person is found dead, etc., an inquisition may be taken by the nearest justice of the peace, who is invested with full power and authority to do and perform all things required of a coroner. Gantt's Dig., sec. 907.

The coroner has power to hold inquests over dead bodies, empanel juries, swear and examine witnesses, inquire into the cause and manner of death, cause suspected persons to be arrested, inquire as to their guilt, make committals, etc. Gantt's Dig., ch. 30.

The testimony of each witness, examined at such inquest, is required to be reduced to writing, if material, read to and signed by the witness. Sec. 885-6.

It seems that the testimony given by the appellant before the justice of the peace, who acted as coroner in holding the inquest

over the dead body of Adam Pippin, was not reduced to writing. The court below did not therefore err in admitting oral evidence to prove what he swore at the inquest. It was the best evidence that could be produced. 3 Arch. Cr. Prac. and Plea., 603.

II. The object of the coroner's inquest was no doubt to ascertain when, where and by what means Adam Pippin came to his death, whether he died a natural death, or by some criminal agency ; and if any person was suspected or arrested for criminal agency in his death, to enquire as to the guilt or innocence of such person.

It was proven by the State, on the trial, that an inquest was held over his dead body, in Drew County, on the 10th of August, 1876, and this is all that was proven in relation to his death.

It was not proven that Henry Harris was arrested for or suspected of any criminal connection with the death of Pippin, or that his guilt or innocence was in any manner the subject of inquiry before the coroner's inquest.

It was proven that appellant swore at the inquest, that Henry Harris was at his house on the evening of the 9th of August, 1876, ate supper, and remained there during the night, and there was evidence conducing to prove that this statement was false, but there was no evidence to prove that the whereabouts of Henry Harris during that particular evening and night, was material to any matter that was the proper subject of inquiry by the coroner or his jury.

The materiality of the testimony on which perjury is assigned, must be established by evidence, and cannot be left to presumption or inference. *The State* v. *Aikins,* 32 Iowa, 403.

Proof that the testimony on which the perjury is assigned in this case, was admitted before the coroner's inquest, was not sufficient to warrant the jury to infer that such testimony was

material. It often happens that immaterial testimony is admitted on trials and inquests. *Commonwealth* v. *Pollard*, 12 Metcalf, 225 ; 3 Wharton Cr. L., sec. 2232, (6th ed.)

We can imagine a state of case made before the coroner in which appellant's testimony might have been material. If Henry Harris was suspected of killing Adam Pippin, and the coroner's jury was making inquiry as to the matter, and it was proven that Pippin was killed on the evening, or early in the night of the 9th of August, 1876, then testimony that Henry Harris was at the house of appellant at the time Pippin was killed, would have been material to exculpate Harris.

But we are not at liberty, neither was the jury on the trial below, to imagine such a case made before a coroner, in order to show the materiality of appellant's testimony and warrant his conviction of perjury.

III. The first instruction given to the jury, at the instance of the State, is in the language of the statute defining perjury, and of course is unobjectionable.

The second, when taken in connection with the first, is well enough ; but, as a separate proposition, it is not good law. A man may " swear falsely to a material fact," and not be guilty of perjury. The false oath must be taken wilfully and corruptly. *Green* v. *State*, 41 Ala., 422. 1 Bishop Cr. L., sec. 233.

The refusal of the second instruction moved for appellant, and the modification made to the first, indicate that the court below was of the opinion that whether the testimony proven to have been given by appellant before the coroner's inquest was material, was a question of fact for the jury, and not of law for the court to determine.

When there is no dispute about the facts sworn to, the question whether the testimony on which perjury is assigned is material, is a question of law to be decided by the court, and not

Nelson vs. The State.

of fact to be passed on by the jury. *Power* v. *Price*, 16 Wend., 450; 12 Id., 500; *Stinman* v. *McWilliams*, 6 Barr., 177.

If the jury were in doubt whether perjury might be assigned upon a false oath taken before a coroner, as well as any other officer, the remark made to them by the court after reading to them the statute defining perjury, was not objectionable.

IV. As to the sufficiency of the indictment :

Perjury is a felony, and the crime is not charged to have been feloniously committed. *Milan* v. *State*, 24 Ark., 348; *Edwards* v. *State*, 25 Ark., 446; *Mott* v. *State*, 29 Ark., 149.

The indictment sets out the matter of the false oath, but does not directly allege that it was material to the issue, or to any matter that was the subject of inquiry by the coroner's inquest.

Either from the facts alleged, or by direct averment, the evidence, which is charged as having been false, must appear to have been material to the issue. But it is sufficient that this appears in one of these modes; it need not be made so to appear by both. 2 Bishop Cr. Pro., sec. 854.

It does not appear from the facts alleged that the testimony of appellant before the inquest was material. The indictment undertook to show how it was material, but failed in the effort, thus : " The matters so testified being material in this, that he swore Henry Harris was at his (said Elias Nelson's) house, when the said Henry Harris, at said times, was not at said Elias Nelson's house." This was a *non sequiter*. It did not follow that it was material because false.

The State failed to prove the materiality of the testimony on which the perjury was assigned, and the indictment was not good in substance.

The judgment must be reversed and the cause remanded, and appellant may be held for a new indictment, if the State desires to prosecute further.