[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10930
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cr-00065-CEM-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID ALAN GARRITY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 30, 2016)

Before HULL, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

After a jury trial, David Alan Garrity appeals his conviction for making a false and fictitious statement in conjunction with the attempted acquisition of a firearm, pursuant to 18 U.S.C. §§ 922(a)(6) and 924(a)(2).  On appeal, Garrity argues that the district court's jury instructions constructively amended the indictment and improperly withheld from the jury the issue of the materiality of his false statement.  After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Form 4473 for Firearm Purchases

According to the trial evidence, each time a person purchases a firearm from a federal firearms licensee, he must fill out a Form 4473 to verify his identity and confirm that he can lawfully purchase the firearm.  If the purchase is made online, the purchaser must come to the store to pick up the firearm and complete a Form 4473 at that time.  At the store, the purchaser must provide documentation, such as a driver's license, with an address that matches the address on the Form 4473.  In the Orlando area of Florida, a firearm purchaser ordinarily must wait three days after completing the Form 4473 before obtaining the firearm.  If, however, the firearm purchaser has a concealed weapons permit, the three-day waiting period is waived, and he can pick up the firearm the same day.

While a person who does not reside in Florida can purchase a firearm in Florida, he cannot pick up the firearm in Florida.  Instead, the purchaser must

2

designate a federal firearms licensee in his home state where the firearm is sent. The purchaser then picks up the firearm in his home state and must complete a Form 4473 at that time.

## B.    Defendant Garrity's Conduct

On June 3, 2014, Garrity went to Gander Mountain, a federally licensed firearms dealer, in St. Mary's, Florida to pick up a firearm he had purchased online. Garrity filled out a Form 4473. In response to Question 2, which asked for a "Current Residence Address," Garrity wrote in an address on Roosevelt Boulevard in Daytona Beach, Florida. In answer to Question 13, which asked for Garrity's state of residence, Garrity wrote "FL." The Form 4473 instructed that a person resides in a state if he "is present in a State with the intention of making a home in that state." The Form 4473 also clarified that a U.S. citizen with two states of residence should list his current residence for Question 13.

Garrity gave the store clerk a Florida driver's license and a concealed weapons permit. The address on the driver's license matched the Roosevelt Boulevard, Daytona Beach address Garrity had provided on the Form 4473. The store clerk, who was also a law enforcement officer, became suspicious when he did not recognize the concealed weapons permit and could not validate it. The store clerk told Garrity he would have to wait three days to get the firearm.

3

Over the next few days, Sean Patton, an investigator with the Florida Office of Agricultural Law Enforcement, investigated Garrity's concealed carry permit. On June 6, 2014, Investigator Patton arrested Garrity when he returned to the Gander Mountain store.

During a post-arrest interview, Garrity told Investigator Patton that he had been living with a friend, Anthony Herzog, while he looked for his own place to live. Garrity said he had been living at Herzog's home at the Roosevelt Boulevard, Daytona Beach address, but had just moved with Herzog to Port Orange, Florida. Garrity admitted that he had provided the store clerk with a false concealed weapons permit he had found online.

Investigator Patton then spoke with Herzog on the telephone to verify Garrity's address, and Herzog disputed Garrity's claim. After speaking with Herzog on the telephone, Patton conducted a follow-up interview with Garrity. This time, Garrity admitted to Patton that he actually lived in New Jersey, and was scheduled to fly back to New Jersey on June 7, 2014.

## C.   Indictment and Trial Proceedings

The indictment charged Garrity with one count of knowingly making a false and fictitious statement in conjunction with the attempted acquisition of a firearm, pursuant to 18 U.S.C. §§ 922(a)(6) and 924(a)(2). With respect to the false

4

statement, the indictment stated that Garrity falsely stated that he resided in Florida:

> knowingly made a false and fictitious written statement to Gander Mountain, which statement was likely to deceive Gander Mountain as to a fact material to the lawfulness of such sale of the said firearm to the defendant under chapter 44 of Title 18, in that the defendant did execute a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, Firearms Transaction Record, and stated <u>that he resided in Florida, when in fact, as the defendant then knew, he did not reside in Florida</u>.

**[Id.]** (emphasis added).

At trial, the jury heard testimony from employees at the Gander Mountain store and Investigator Patton as to the events recounted above.

In addition, Anthony Herzog testified that Garrity had never lived with him in Florida. In fact, Garrity could not have lived at Herzog's Roosevelt Boulevard, Daytona Beach address in June 2014 because Herzog sold that home in November 2013 and moved to a new home in Port Orange, Florida. According to Herzog, Garrity visited the Roosevelt Boulevard home once for a few days and visited the Port Orange home twice for three to five days. During the June 2014 visit, Herzog met Garrity at the airport when he flew to Florida from New Jersey and later drove Garrity back to the airport so that Garrity could return to New Jersey.

The government also presented testimony from: (1) a New Jersey police officer who said that in September 2012, Garrity presented him with a vehicle registration in his name and with an address on Broadview Avenue in Berlin, New

5

Jersey; (2) a federal agent who said that he arrested Garrity on the federal charge in 2015, at his home on Broadview Avenue in Berlin, New Jersey; and (3) a U.S. Marshal who testified that when Garrity was being booked on his federal charge in 2015, Garrity said his residence was at an address on Broadview Avenue in Berlin, New Jersey.

Garrity testified in his own defense. Garrity admitted that he did not live at the Roosevelt Boulevard, Daytona Beach address when he completed the Form 4473. Garrity maintained, however, that in 2014, he considered himself to be a resident of Florida. Garrity explained that he was a truck driver with his main route between New Jersey, where his family lived, and Florida. When his work brought him to Florida, he stayed with Herzog, but he had been planning to move permanently to Florida since 2012. He used Herzog's address for mail, for a Florida commercial driver's license, to register and insure two vehicles in Florida, and to register to vote in Florida. At the time of his 2014 trip to Florida, Garrity "was looking at places to move down." Garrity said that he returned to New Jersey only to visit his children and because his father was sick. When he was in Berlin, New Jersey, he stayed at either his in-laws' house on Broadview Avenue or at his mother's house on Washington Avenue.

Garrity's former mother-in-law testified that Garrity originally lived in a home on Broadview Avenue in Berlin, New Jersey, but, at some point, he moved

6

to Florida to live with a friend named Tony. She said she owned the home on Broadview Avenue, but admitted that Garrity paid the mortgage and taxes.

At the charge conference, Garrity objected to the district court's proposed jury instruction that one of the elements of the crime was that "the Defendant knowingly made a false and fictitious statement, orally or in writing, that was likely to deceive the dealer." Garrity argued that the instruction should limit the false statement to his answer to Question 13 of the Form 4733. Although the government had no objection to the limitation, the district court overruled Garrity's objection. The district court gave this charge to the jury and also instructed the jury that it would be provided with a copy of the indictment to refer to during deliberations and "the Defendant is on trial only for the specific crime charged in the Indictment. Explicitly, the Defendant is charged with making a false or fictitious statement on ATF Form 4473."

During closing arguments, the government argued that Garrity lied when he wrote on the Form 4473 that he lived at the Roosevelt Boulevard address in Daytona Beach, Florida because the evidence showed that he did not live in Florida at all, but rather in New Jersey, where his family lived, where he paid the mortgage and taxes on the Broadview Avenue residence, and where he admitted to Patton and other law enforcement officers that he actually lived. The government maintained that Garrity merely used the Roosevelt Boulevard address so he could

7

purchase firearms in Florida rather than his actual home state of New Jersey, which had more onerous restrictions on firearm purchases.

In response, Garrity's attorney argued that that "the Indictment is the charge that my client is accused of, and that is Question 13, his place of residence" and that Garrity had not lied in responding to Question 13 because he considered himself to be a resident of both Florida and New Jersey, as defined in the Form 4473. Defense counsel stressed that "as it relates to element two, the knowingly made a false or fictitious statement, again, the place of residence is what is charged," which was where Garrity "intended to make a home," and "the question is not . . . where is his physical address."

After an hour of deliberations and without asking any questions, the jury found Garrity guilty of the charge in the indictment.

## II.  CONSTRUCTIVE AMENDMENT

### A.    Garrity's Claim

Garrity argues that the objected to jury instruction impermissibly broadened the indictment by allowing the jury to convict him based on his answer to Question 2 of Form 4733 that his current residence address was on Roosevelt Boulevard in

8

Daytona Beach, rather than his answer to Question 13 that his state of residence was Florida.[1]

## B.    General Principles

"A constructive amendment to the indictment occurs where the jury instructions so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment." United States v. Sanders, 668 F.3d 1298, 1309 (11th Cir. 2012) (quotation marks omitted).  In considering whether an indictment was constructively amended, we look at whether the court's instructions "'viewed in context,' resulted in the expansion of an indictment either literally or in effect."  United States v. Behety, 32 F.3d 503, 508-09 (11th Cir. 1994).  To that end, it is "crucial to examine the court's instructions in light of the trial itself."  United States v. Andrews, 850 F.2d 1557, 1559 (11th Cir.1988) (en banc).[2]

## C.    Analysis

The district court's jury instructions did not constructively amend the indictment.  That is, the instructions did not modify the elements of the offense so that Garrity was convicted on a ground not alleged in the indictment.  The

---

[1]On appeal, Garrity does not challenge the validity of the indictment or the sufficiency of the evidence to convict him of the offense charged.  He also does not challenge his 10-month sentence.

[2]We review de novo whether jury instructions constructively amended the indictment. United States v. Guitierrez, 745 F.3d 463, 473 (11th Cir. 2014).

9

indictment alleged that Garrity knowingly made a false or fictitious written statement by stating that he resided in Florida when he did not reside in Florida. Garrity wrote that he resided in Florida in his answers to both Questions 2 and 13 of the Form 4473. Thus, Garrity could have been found guilty for his answer to either or both Question 2 and Question 13, and his argument that the indictment did not implicate Question 2 lacks merit.

Moreover, the district court's instruction, when viewed in context, clearly did not expand the indictment. The district court never stated that the jury could convict Garrity based on a statement about a false street address. Although the district court did not specify that the false or fictitious statement for which Garrity could be convicted was his statement regarding his Florida residence, the district court instructed the jury that Garrity could be convicted of only the specific crime charged in the indictment and gave the indictment to the jury. The indictment clearly stated that Garrity's false statement was that he resided in Florida. Therefore, even assuming arguendo that the objected-to instruction was somewhat ambiguous, the instructions as a whole did not give the jury the impression it could convict Garrity on grounds not alleged in the indictment.

In addition, the parties' trial evidence focused on whether Garrity actually lived in Florida or New Jersey, and their closing arguments clearly indicated to the jury that the statements on the form at issue were the statements Garrity made

about residing in Florida.  The prosecutor, for example, argued that Garrity lied on the form when he said he lived at the Roosevelt Boulevard address in Dayton Beach, Florida, not because the evidence showed Garrity lived somewhere else in Florida, but because the evidence showed that he actually lived in New Jersey. Likewise, defense counsel argued to the jury that what matter was Garrity's state residence, not his street address, and that Garrity had truthfully reported his Florida residency because Garrity believed he was a resident of both New Jersey and Florida.  **]**

In sum, the instruction to which Garrity objected, when viewed in context of the whole trial, did not expand the indictment and allow the jury to convict him merely of lying on the Form 4473 about his street address.

### III.  MATERIALITY OF THE FALSE STATEMENT

At trial, the district court charged the jury that the materiality of the false or fictitious statement is a question of law for the court to decide and that if the jury found that the statement was false, then it was material to the sale of the firearm.

It is well-settled in this Circuit that for purposes of 18 U.S.C. § 922(a)(6), the materiality of a false statement is a question of law for the court and that a firearm purchaser's identity, which includes his place of residence, is always material to the lawfulness of a firearm sale.  See United States v. Gudger, 472 F.2d 566 (5th Cir. 1972) (adopting the First Circuit's reasoning that a firearm

11

purchaser's identity, including his name, age and place of residence, is per se material to the lawfulness of the sale because under 18 U.S.C. § 922(b)(5), "the sale is illegal unless these matters are correctly recorded" by the firearm dealer, and affirming the district court's denial of the defendant's motion for a judgment of acquittal where the trial evidence showed the defendant gave a fictitious address on a Form 4473); see also United States v, Frazier, 605 F.3d 1271, 1279-80 (11th Cir. 2010) (involving "straw man purchasers" of firearms); United States v. Ortiz, 318 F.3d 1030, 1036-37 (11th Cir. 2003) (same); United States v. Klais, 68 F.3d 1282, 1283 (11th Cir. 1995) (same). [3]

Garrity argues that the forgoing precedent, and the district court's instruction, are inconsistent with the reasoning in United States v. Gaudin, 515 U.S. 506, 115 S. Ct. 2310 (1995).  In Gaudin, the Supreme Court held that because the materiality of a false statement made to a federal agency is an element of a 18 U.S.C. § 1001 offense, the Fifth Amendment requires the issue of materiality to be submitted to the jury.  Gaudin, 515 U.S. at 509, 522-23, 115 S. Ct. at 2313, 2320.

Garrity concedes that his argument is foreclosed by our binding precedent and states that he raises this issue to preserve it for further appellate review.  As Garrity acknowledges, in our most recent decision on this issue, United States v.

---

[3]Because whether a fact is material to the lawfulness of a firearm sale is "purely a question of law," our review is de novo.  United States v. Frazier, 605 F.3d 1271, 1279 (11th Cir. 2010).

<u>Klais</u>, a panel of this Court denied a petition for rehearing based on the intervening decision in <u>Gaudin</u>, and squarely held that "the reasoning of <u>Gaudin</u> with respect to 18 U.S.C. § 1001 does not apply to 18 U.S.C. § 922(a)(6)."  68 F.3d at 1282, 1283 (explaining that § 922(a)(6) "uses the word 'material' in an entirely different manner" than § 1001).  We are bound by a prior panel precedent.  <u>See</u> <u>United States v. Steele</u>, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en banc).  Accordingly, the district court's materiality instruction was not erroneous.

For these reasons, we affirm Garrity's conviction and sentence.

**AFFIRMED.**