Filed 12/3/14  P. v. Hardy CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060535 |
| v. | (Super.Ct.No. RIF125676) |
| KRISTIN LEE HARDY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michele D. Levine, Judge.  Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Paige Hazard and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Kristin Lee Hardy appeals from an order denying his petition to recall his sentence under the Three Strikes Reform Act of 2012, added by Proposition 36 (as approved by voters, Gen. Elec. (Nov. 6, 2012)) (the Act). (Pen. Code, § 1170.126.)[1] On appeal, defendant raises several arguments to support his claim that the trial court erred in finding him ineligible for resentencing under the Act. For the reasons explained *post*, we reject defendant's contentions and affirm the trial court's order finding defendant ineligible for resentencing under the Act.

I

FACTUAL AND PROCEDURAL BACKGROUND[2]

On August 27, 2005, Melissa M. (M.) made a 911 call from a payphone at a market. She told the operator, "[M]y boyfriend was beating me." She named defendant as her boyfriend.

At 7:15 a.m., Officer Vicente De La Torre responded to the 911 call. When he arrived, M. was crying. She had a black eye and red "linear marks" on the sides of her neck. He did not see any finger marks. A paramedic who examined M., however, noted "[o]bvious marks from hands around [her] neck . . . ." Photographs of M.'s injuries were admitted into evidence.

---

[1] All future statutory references are to the Penal Code, unless otherwise stated.

[2] The factual background is taken from this court's nonpublished opinion affirming defendant's current convictions (see *People v. Hardy* (Dec. 29, 2010, E049453)). This court's opinion and photographs admitted at trial are found in the current record on appeal, attached as exhibits to People's Opposition to Defendant's Petition for Recall of Sentence.

M. told Officer De La Torre that defendant came home around 3:00 or 4:00 a.m. He had been trying to phone her, and he was angry because the phone was off the hook. He took a pink scarf, wrapped it around her neck, and strangled her with it. Next, he choked her with his hands. He said, "I'm gonna kill you . . . ." She lost consciousness for a couple of seconds, but he slapped her and she came to.[3]

Officer De La Torre took M. to the hospital. M.'s right eye was bruised and swollen and there were red marks around her neck. There was also a scratch on her wrist. M. told the nurse that her boyfriend had wrapped a pink scarf around her neck and choked her with it for 15 minutes. He also slapped her and hit her. She "blacked out for a couple [of] seconds."

Defendant's mother testified that on August 27, 2005, around 7:00 or 8:00 a.m., defendant had some scratches, and one of his lips was "burst or scratched." Later that morning, defendant was arrested. Photos of his injuries showed a scratch on his neck and a "busted" or bruised upper lip.

M. later told defendant's mother that she had punched defendant in the face "[o]ver a girl." She also said that she had made up the rape charges.

The jury heard two phone calls that defendant made to M. while he was in jail, one before and one after the previous hearing.

---

[3] M. also stated that defendant had forced her to orally copulate him and then to have sexual intercourse with him. M. later recanted these statements, saying she had lied about the rape allegations because she was angry at defendant.

In the first call, on February 24, 2006, he told her to stop talking to "these people," adding, "[W]ould you rather me go to jail?"

He also told her, "[F]iling a false police report is only a misdemeanor, you're going to get probation.  Would you rather me go to prison or you get probation?"

"I know what I did was wrong," he stated; ". . . I'm owning up to my responsibility."

In addition, he said, "[I]t's gonna have to go to prelim and I want you to be ready. I want you to get that letter from my mom.[4]  Don't forget, read over everything. Memorize it like it's a movie script."

In the second call, on April 18, 2006, defendant said, "What I did was foul, it was fucking wrong.  It was stupid, it was sick."  He told M.:  "Go [into] hiding, something[,] either that or call you an attorney and tell them you have a problem in your hands, you got scared in . . . making some false accusations.  I know, the accusations are real, but babe, just try to help me . . . ."

Between January and July 2007, Stephen Cline, defendant's then counsel, had a number of phone calls and one meeting with M.  She told him that defendant had hit her, but she had started it, and she had hit him as well.  She explained that, in the jailhouse phone calls, they had been talking solely about the domestic violence allegations.  M. also said she had lied at the preliminary hearing because the district attorney's office told

---

[4] Defendant's mother testified that defense counsel showed her the letter that M. had written, but she denied ever having a copy in her possession.

4

her, "You have to tell the story you told initially or you could lose your child. You could go to jail for perjury . . . ."

At trial, M. testified that she and defendant had been living together since June 2005. On the night of August 26-27, 2005, she was jealous because he had been flirting with some women on a chat line. At 3:00 a.m.,[5] she woke up because defendant came into the bedroom. He asked, "Why didn't you answer the phone? I was trying to call." According to M., he was not angry. She realized that the phone was off the hook.

They argued. During the argument, defendant hit her in the eye with his fist, giving her a black eye. She hit him back, causing his cut lip.

Defendant put a pink scarf around her neck and tightened it, causing red marks. It hurt, but she testified that it did not make it hard to breathe. She did not lose consciousness (though she admitted telling Officer De La Torre that she did). She was hitting defendant and "trying to push him off."

After defendant removed the scarf, he put his hands around her neck and squeezed. She testified that he was not applying much pressure. The squeezing lasted for less than a minute. It did not make it hard to breathe (though she admitted telling Officer De La Torre that it did). M. fell on the bed and pretended to pass out so

---

[5] Although M. did not mention it on direct, cross, or redirect, on recross, she testified that defendant had already hit her twice that night. First, when she and defendant initially got home, "I was cussing at him, and . . . he was calm, and he hit me, and then I hit him in his face." Next, after defendant went to sleep, M. answered a phone call from one of the women from the chat line. M. yelled at defendant; "[h]e jumped, and then his hand hit [her] face."

defendant would take his hands off her neck. He slapped her, but "not a hard slap, just like a pat to make sure I didn't pass out."

After the argument, they had consensual sex, including both intercourse and oral copulation (though she admitted telling Officer De La Torre that it was not consensual).[6]

According to defendant, on the night of the incident, he was worried because M. was not answering the phone. When he got home, he found that it had been off the hook; he was not angry.

At that point, they had consensual sex, including both intercourse and oral copulation. M. wanted "kinky sex"; at her request, defendant put first a scarf and then his hands around her neck. That "must have been" what caused the marks on M.'s neck. She was never unconscious.

After that, defendant phoned the chat line. This made M. angry, and they got into an argument. Defendant stopped it by going to sleep. He awoke because M. punched him in the face, which caused his "busted lip." At first, he did not know who had hit him. In self-defense, he started throwing punches; one of them hit M. and presumably caused her black eye.[7] She kept trying to hit him, so he grabbed her wrists to restrain her. A further argument ensued. Eventually, defendant went back to sleep.

---

[6] M. testified that the pink scarf was not used during the sex—"[t]hat was completely separate . . . ." After being reminded, however, of her earlier statements, she testified that it was used.

[7] On direct, defendant testified that first, someone hit him; then, he threw a couple of punches; and then, he heard M. scream (inferably when one of the punches connected). That was when he realized she was the person who hit him. On cross, however, he

*[footnote continued on next page]*

When defendant heard that the police wanted to talk to him, he contacted them voluntarily. Regarding the jailhouse conversations, defendant explained that when he said what he did was wrong, he meant "his relationship with other women and the injury to [M.'s] eye."

On July 29, 2009, a jury found defendant guilty of assault by means of force likely to cause great bodily injury (§ 245, former subd. (a)(1))[8] and inflicting corporal injury on a cohabitant (§ 273.5, subd. (a)). However, it found him not guilty of rape (§ 261, subd. (a)(2)), unlawful oral copulation (§ 288a, subd. (c)(2)), and making a criminal threat (§ 422). Two "strike" prior allegations (§§ 667, subds.(b)(1), 1170.12), one prior serious felony enhancement (§ 667, subd. (a)) and one 1-year prior prison term enhancement (§ 667.5, subd. (b)) were found true.

On September 15, 2009, the trial court denied defendant's *Romero*[9] motion and sentenced defendant to a total of 25 years to life in prison.

---

*[footnote continued from previous page]*
testified, "she screamed while she was striking me. I hadn't hit her yet when she screamed." He admitted knowing who was hitting him. When the prosecutor pointed out the contradiction and asked which version was the truth, he said, "Whichever one. I guess you could say the first one."

[8] Assault by means of force likely to cause great bodily injury is now found under section 245, subdivision (a)(4). For the sake of clarity, we will refer to the aggravated assault allegation under its former subdivision.

[9] A "*Romero* motion" is a motion to dismiss a strike prior in the interest of justice under section 1385. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.)

On December 29, 2010, this court affirmed the judgment with the exception of remanding the matter to the trial court with directions to strike the prior serious felony enhancement, to consider imposing the one-year prior prison term enhancement or otherwise to reimpose the original sentence.

On April 15, 2011, at the resentencing hearing following remand, the trial court struck the serious felony enhancement and reimposed the original sentence.

On November 6, 2012, the electorate passed Proposition 36, the Act. Among other things, this ballot measure enacted section 1170.126, which permits persons currently serving an indeterminate life term under the "Three Strikes" law to file a petition in the sentencing court seeking to be resentenced to a determinate term as a second striker. (§ 1170.126, subd. (f).) If the trial court determines, in its discretion, that the defendant meets the criteria of section 1170.126, subdivision (e), the court may resentence the defendant. (§ 1170.126, subds. (f), (g).)

Section 1170.126, subdivision (e), provides, as pertinent here, that a defendant is eligible for resentencing if he or she "is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7." (§ 1170.126, subd. (e)(1).) The Act makes ineligible for resentencing those persons who, inter alia, "[d]uring the commission of the

8

current offense . . . intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii); 1170.12, subd. (c)(2)(C)(iii); see § 1170.126, subd. (e).)

On April 19, 2013, defendant filed a petition for resentencing under section 1170.126.

On April 24, 2013, at an ex parte hearing, Judge Becky Dugan appointed the public defender's office and set a recall sentence conference for May 15, 2013, in Department 64.

On May 15, 2013, the matter was heard in Department 64 with defendant's counsel and the prosecutor present. During that hearing and subsequent hearings, it was determined that the parties would brief their positions on the petition.

On June 20, 2013, the People filed an opposition to the petition with supporting exhibits on the ground that defendant was statutorily ineligible under the Act. The People argued that defendant was ineligible because during the commitment offense of assault he "intended to cause great bodily injury to another person." The People filed an additional opposition to the petition on June 27, 2013.

On July 12, 2013, defendant filed a reply to the People's oppositions, and a supplemental reply on August 9, 2013, where defendant argued that an eligibility determination could not be made in Department 64 because Judge Dugan had already found defendant eligible for resentencing. The People filed a response to defendant's reply and supplemental reply on August 23, 2013.

During a hearing on August 30, 2013, in Department 64, Judge Michele D. Levine, having read all the briefs submitted, writs after conviction, and this court's opinion, found that the initial determination of eligibility made by Judge Dugan did not preclude Judge Levine from making an eligibility determination upon review of the trial transcripts. Judge Levine further found that she had the authority and a duty to review matters outside the convicted offenses themselves including review of the trial transcripts.

On November 20, 2013, defendant filed a *Romero* motion to dismiss one of his prior strike allegations. The People filed an opposition to the *Romero* motion on November 26, 2013.

Judge Levine heard the petition on December 18, 2013. At that time, Judge Levine reiterated that she had authority to make an eligibility determination on the petition. Following argument from the parties, Judge Levine found defendant ineligible for resentencing under section 1170.126 because his current assault offense involved intent to cause great bodily injury to the victim and denied the petition. The court declined to reach the issue of whether defendant represented a danger to public safety, or was otherwise suitable for modification of his sentence. The court also denied defendant's *Romero* motion, without prejudice, and ordered defendant remanded to prison.

Defendant timely filed an appeal on February 3, 2014.[10]

II

DISCUSSION

Defendant makes a number of arguments relating to the denial of his petition to recall his sentence. Specifically, he argues that (1) Judge Levine improperly heard the petition in determining defendant's eligibility because Judge Dugan had already determined eligibility prior to setting the matter for briefing, and therefore Judge Levine's subsequent eligibility finding violated principles of judicial comity; (2) Judge Levine improperly considered extraneous matters rather than limiting herself to the mere fact of defendant's convictions in determining eligibility; and (3) Judge Levine's finding that defendant intended to cause great bodily injury during the commission of the assault conviction violated his state and federal constitutional rights to a jury trial and due process. As a result, defendant claims this court should reverse the trial court's order denying his petition and remand the matter for further proceedings, including the determination of whether defendant poses a threat to public safety or should otherwise be resentenced under the amended Three Strikes law.

---

[10] We note that in *Teal v. Superior Court* (Nov. 6, 2014, S211708) __ Cal.4th __ [2014 Cal. LEXIS 10481], our Supreme Court recently concluded decisions under the Act are appealable orders.

11

A.      *The Act Generally*

"The Act amended sections 667 and 1170.12, and added section 1170.126; it changed the requirements for sentencing some third strike offenders.  'Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence.  The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor.  In all other cases, the recidivist will be sentenced as a second strike offender.  [Citations.]  The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety.  (§ 1170.126.)' "  (*People v. Brimmer* (2014) 230 Cal.App.4th 782, 791 [Fourth Dist., Div. Two] (*Brimmer*), citing from *People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168 (*Yearwood*).)

"Thus, there are two parts to the Act:  the first part is *prospective* only, reducing the sentence to be imposed in future three strike cases where the third strike is not a serious or violent felony [citations]; the second part is *retrospective*, providing *similar*, *but not identical*, relief for prisoners already serving third strike sentences in cases where the third strike was not a serious or violent felony (Pen. Code, § 1170.126)."  (*People v.*

12

*Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1292 (*Kaulick*), italics in original.)  "The main difference between the prospective and the retrospective parts of the Act is that the retrospective part of the Act contains an 'escape valve' from resentencing prisoners whose release poses a risk of danger."  (*Id.* at p. 1293.)

Defendant's current commitment felony offenses of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)) and inflicting corporal injury on a cohabitant (§ 273.5, subd. (a)) are not serious or violent felonies under section 667.5, subdivision (c), or section 1192.7, subdivision (c).  However, the inquiry does not end with whether or not the current convictions are a serious or violent felony.  As previously noted, an inmate is eligible for such resentencing if none of his or her commitment offenses constitute serious or violent felonies *and none of the enumerated factors disqualifying a defendant for resentencing under the Act apply.*  (§ 1170.126, subd. (e).)  Intending to cause great bodily injury to another person during the commission of a current offense is a disqualifying factor listed in section 667, subdivision (e)(2)(C)(iii), and section 1170.12, subdivision (c)(2)(C)(iii).[11]  Thus, under the plain language of the

---

[11]  Section 667, subdivision (e)(2)(C)(iii) provides:  "[(e)(2)](C)  If a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not a serious or violent felony as defined in subdivision (d), the defendant shall be sentenced [as a second strike offender] pursuant to paragraph (1) of subdivision (e) unless the prosecution pleads and proves any of the following:  [¶] . . . [¶] (iii) *During the commission of the current offense, the defendant . . . intended to cause great bodily injury to another person.*"  (Italics added.)

Section 1170.12, subdivision (c)(2)(C)(iii), provides:  "[(c)(2)](C)  If a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved,

*[footnote continued on next page]*

13

intended-to-cause-great-bodily-injury exclusion, defendant is ineligible for resentencing relief as a second strike offender if his life sentence was "imposed" because "[d]uring the commission of the current offense [he] intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii) & 1170.12, subd. (c)(2)(C)(iii), both cross-referenced in § 1170.126, subd. (e)(2).)[12]

In approving the Act, the voters found and declared that its purpose was to prevent the early release of dangerous criminals and relieve prison overcrowding by allowing low-risk, nonviolent inmates serving life sentences for petty crimes, such as shoplifting and simple drug possession, to receive twice the normal sentence instead of a life sentence. (Ballot Pamp., Gen. Elec. (Nov. 6, 2012) text of Prop. 36, § 1, subds. (3), (4) & (5), p. 105 (Pamphlet); see *People v. White* (2014) 223 Cal.App.4th 512, 522 (*White*) (review den. Apr. 30, 2014, S217030); accord *Brimmer, supra*, 230 Cal.App.4th at p. 792.) The electorate also mandated that the Act be liberally construed to effectuate the protection of the health, safety, and welfare of the people of California. (Pamphlet,

---

*[footnote continued from previous page]*
and the current offense is not a felony described in paragraph (1) of subdivision (b) of this section, the defendant shall be sentenced [as a second strike offender] pursuant to paragraph (1) of subdivision (c) of this section, unless the prosecution pleads and proves any of the following: [¶] . . . [¶] (iii) *During the commission of the current offense, the defendant . . . intended to cause great bodily injury to another person*" (Italics added.)

[12] Here, only the second resentencing eligibility criterion set forth in section 1170.126, subdivision (e)(2), is at issue in this appeal. The first resentencing eligibility criterion set forth in section 1170.126, subdivision (e)(1), is met because defendant is serving an indeterminate life sentence for crimes that (as noted, *ante* ) are not serious or violent felonies.

14

*supra*, text of Prop. 36, § 7, p. 110; see *White*, *supra*, at p. 522.) Accordingly, we liberally construe the provisions of the Act in order to effectuate its foregoing purposes and note that findings in voter ballot pamphlets may be used to illuminate ambiguous or uncertain provisions of an enactment. (See *White*, *supra*, at p. 522; *Yearwood*, *supra*, 213 Cal.App.4th at pp 170-171.)

B.    *Judicial Comity*

Initially, defendant argues that Judge Levine improperly determined he was ineligible for resentencing because a trial court judge may not lawfully reconsider or overrule an order made by another trial court judge, here Judge Dugan, who apparently had made a preliminary determination of eligibility. Defendant therefore asserts, under principles of judicial comity, the People had no right to relitigate, and Judge Levine had no right to determine, whether defendant was eligible under the Act.

The April 24, 2013 minute order does not indicate whether Judge Dugan had initially determined defendant's eligibility under the Act, and there is no reporter's transcript of the proceedings. In relevant part, the April 24, 2013 minute order merely states, "Public Defender Appointed. [¶] Recall Sentence Conference set on 05/15/2013 at 8:30 in Department 64."

However, Judge Levine later stated at two separate hearings that Judge Dugan had preliminarily determined defendant's eligibility under the Act. Specifically, at the December 18, 2013 hearing on the petition, Judge Levine stated:

15

"Also, the issues concerning my determination on eligibility and employing my duty to make that determination, even though Judge Dugan . . . has otherwise made a preliminary determination on eligibility.  We've set up a task here in our court, having over 300 Prop. 36 petitions, and making sure that we went through them in a timely fashion.  We have approximately 22 left in our courthouse at this juncture.  We've gone through many, and the reason for that is that Judge Dugan and myself divided up the task in terms of eligibility, and then ultimately hearings that were more involved and conferences on these matters.

"It does not, in the Court's mind, because Judge Dugan made a preliminary determination that [defendant] is eligible, that does not preclude this Court from looking more carefully at the facts and circumstances of the case in making that determination.  Judge Dugan did not do so, and it does not preclude this Court from doing so; and I feel very, very strongly about that in terms of this Court's determination; and I believe it is—I'm duty bound to make that determination once it's brought before this Court . . . ."[13]

As "a general rule one trial judge cannot reconsider and overrule an order of another trial judge.  There are important public policy reasons behind this rule.  'For one superior court judge, no matter how well intended, even if correct as a matter of law, to

---

**13**  Because Judge Levine had acknowledged that Judge Dugan had made a preliminary eligibility determination, we will not address defendant's claim that a trial court must, upon receipt of the petition, *immediately* make an eligibility determination under section 1170.126.

16

nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court.' The rule also discourages forum shopping, conserves judicial resources, prevents one judge from interfering with a case ongoing before another judge and prevents a second judge from ignoring or arbitrarily rejecting the order of the previous judge which can amount to a violation of due process. If the first judge's ruling is not reviewable on appeal or is so egregiously wrong and prejudicial the injured party cannot wait for an appeal, there is always the remedy of an extraordinary writ in this court." (*People v. Riva* (2003) 112 Cal.App.4th 981, 991 (*Riva*), fns. omitted.)

"Naturally, as with all general rules, there are exceptions to the rule one judge may not overrule the order of another." (*Riva*, *supra*, 112 Cal.App.4th at p. 991, fn. omitted.) "In criminal cases there are few limits on a court's power to reconsider interim rulings." (*People v. Castello* (1998) 65 Cal.App.4th 1242, 1246.) "Some of the court's inherent powers are set out by statute, but the inherent powers of the courts are derived from the Constitution and are not confined by or dependent on statute." (*Id.* at pp. 1247-1248.) "A court's inherent powers are wide." (*Castello*, *supra*, at p. 1248.) As "an essential ingredient of jurisdiction," those powers "include authority to rehear or reconsider rulings." (*Ibid.*) One of the powers historically recognized as inherent in the courts is the right to conduct and control the order of business in order to safeguard the rights of all of the parties. (*Ibid.*) That power is recognized as judicial in nature and as necessary to enforce rights and redress wrongs. (*Ibid.*)

17

*Riva* cautions that "for reasons of comity and public policy" a court "should decline to reverse or modify" another court's ruling "unless there is a highly persuasive reason for doing so" and admonishes that "mere disagreement with the result of the order is not a persuasive reason for reversing it." (*Riva*, *supra*, 112 Cal.App.4th at p. 992.) As *Riva* observes, one of the factors to consider in determining the propriety of a later ruling by one court contrary to a prior ruling by another court is "a change in circumstances since the previous order was made." (*Id*. at pp. 992-993.) Our review de novo of the question of law at issue persuades us that the later ruling was not an act in excess of the court's authority. (See *In re Alberto* (2002) 102 Cal.App.4th 421, 426.)

We reject defendant's contention that Judge Levine lacked jurisdiction to reconsider Judge Dugan's *initial* determination of defendant's eligibility under section 1170.126, or that the basic principles of judicial comity were violated in the instant matter. As part of processing over 300 section 1170.126 petitions in a timely manner, as noted by Judge Levine, Judge Dugan made a *preliminary* determination of eligibility without an in-depth review of the facts and circumstances of defendant's case. Judge Dugan then transferred the case to Department 64 for further proceedings on the matter. By transferring the case to another department after only making an *initial* determination as to eligibility based merely on defendant's current commitment offenses, as opposed to a final ruling, Judge Levine had the authority to make a final ruling as to eligibility and the later ruling was not an act in excess of Judge Levine's authority.

18

Our conclusion is supported by a recent decision analyzing section 1170.126. In *People v. Bradford* (2014) 227 Cal.App.4th 1332, the defendant appealed after the trial court denied his petition to recall his sentence. On appeal, our colleagues considered the issues, among others, whether the defendant had a right to be heard, but not to an evidentiary hearing, on whether he was disqualified from sentencing; whether briefing may be presented to the trial court on the issue of eligibility on or after a petition is filed; and whether a defendant has a right to a formal hearing on the threshold issue of eligibility. (*Id.* at pp. 1336-1340.) The court found: "Having reviewed the statutory language, it is apparent that an evidentiary hearing is not contemplated by the statute at the initial eligibility stage. Further, no particular statutory procedure describes how the trial court is to go about making the eligibility determination. Consequently, it is necessary for the courts to determine what evidence should be considered and whether to impose additional procedural protections to protect the due process rights of the parties to be heard. (See *Kaulick*, *supra*, 215 Cal.App.4th at p. 1299, fn. 21, [suggesting in dictum that the People may have the right to present evidence if a court's determination was based on anything other than the undisputed record of conviction].)" (*Bradford*, *supra*, at p. 1337.)

The *Bradford* court also concluded: "As has been determined, the current matter does not call upon the trial court to consider new evidence in making its determination, which is limited to the record of conviction. Consequently, it is not essential for the court to hold a formal hearing. Considering that the record of conviction is 'set' when the trial

19

court considers a petitioner's eligibility for resentencing, the petitioner would be well advised to address eligibility concerns in the initial petition for resentencing. But if the petitioner has not addressed the issue and the matter of eligibility concerns facts that were not actually adjudicated at the time of the petitioner's original conviction (as here), the trial court should invite further briefing by the parties before finding the petitioner ineligible for resentencing. In the current case, the trial court should have invited the parties to brief the issue of whether it should determine, based on petitioner's possession of wire cutters, that he was armed with a deadly weapon." (*Bradford*, *supra*, 227 Cal.App.4th at p. 1341.)

The *Bradford* court further explained: "By contrast, the People will have ample opportunity to be heard during the court proceedings and to raise any claim that a particular petitioner is ineligible for resentencing consideration. Provided the trial court has preliminarily determined that none of the ineligibility factors apply, the statute then calls upon the court to exercise its discretion to consider evidence of the petitioner's dangerousness. That determination necessarily involves input from the parties and will likely result in a contested hearing. (See *Kaulick*, *supra*, 215 Cal.App.4th at pp. 1296-1300; see also § 1170.126, subd. (i).) Thus, when the trial court indicates it is inclined to proceed to a discretionary determination of whether to resentence a petitioner, the People will have notice the court has tentatively determined that the petitioner meets the threshold eligibility criteria. If the People disagree with that preliminary determination of eligibility, they may file a written request in the trial court to consider materials in the

20

original record of conviction that the People believe support a determination that the petitioner is ineligible for resentencing. The court may then consider any response by the petitioner before further proceeding in the matter." (*Bradford*, *supra*, 227 Cal.App.4th at p. 1341.)

As *Bradford* makes clear, once a trial court makes a *preliminary* determination of eligibility, the People may then file a written request, as in this case, in the trial court to consider the defendant's record of conviction to support a determination the defendant is ineligible for resentencing. Thus, as explained in *Bradford*, section 1170.126 contemplates a procedure whereby a same or different trial court may reconsider the issue of eligibility for resentencing after a trial court has made an initial eligibility determination. This is because generally when an initial eligibility determination is made, a trial court is basing its eligibility finding on a petitioner's convictions, as in this case, without also considering a petitioner's record of conviction.

Moreover, due process requires that the People be afforded notice and an opportunity to be heard. (See *Dix v. Superior Court* (1991) 53 Cal.3d 442, 451.) "[N]otices must be given of any application where the rights of an adverse party are affected, even though no statute, as here, specifically requires it." (*People v. Hadley* (1967) 257 Cal.App.2d Supp. 871, 875.) " 'A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention "is lacking in all the attributes of a judicial determination." ' " (*People v. Dennis* (1986) 177 Cal.App.3d 863, 873.)

21

Having analyzed the statutory language of the Act, Judge Levine's order denying defendant's petition on the ground that he was ineligible for resentencing was neither in excess of jurisdiction nor a violation of judicial comity.

C.    *Use of Prior Opinion and Trial Transcript to Establish Eligibility*

Citing the "plead and prove" language contained in sections 667, subdivision (e)(2)(C), and 1170.12, subdivision (c)(2)(C), defendant also claims that a determination whether a petitioner qualifies for resentencing "must be based on" the fact of a petitioner's conviction itself and the People are precluded from relitigating the facts of the prior commitment conviction to establish the disqualifying factor.  Therefore, defendant argues the trial court's reliance on facts beyond the record of conviction was error, contending that the court should not have looked at our prior opinion or trial transcript to determine whether the facts showed he was ineligible because he intended to inflict great bodily injury.  We disagree.

Initially, we find that the circumstances rendering a commitment offense ineligible are not subject to a pleading and proof requirement.  The Act requires pleading and proof when ineligibility for lenient treatment under the Act applies *prospectively*, that is, to persons currently charged with a three strikes offense that is not itself defined as serious or violent.  (§§ 667, subd. (e)(2)(C) ["unless the prosecution pleads and proves any of the following"]; 1170.12, subd. (c)(2)(C) ["unless the prosecution pleads and proves any of the following"].)  No pleading and proof language appears in the part of the Act addressing relief to persons previously sentenced under the Three Strikes law.

(§ 1170.126, subd. (e).)  The *retrospective* relief under section 1170.126 is conditioned upon an *eligible* commitment offense, which "*the* [*trial*] *court shall determine*" on "receiving a petition for recall of sentence under this section."  (§ 1170.126, subd. (f), italics added.)

Nowhere in the resentencing provisions of section 1170.126, subdivision (e), is there any reference to pleading and proof of disqualifying factors.  Generally speaking, a pleading and proof requirement will not be implied.  (See *People v. Griffis* (2013) 212 Cal.App.4th 956, 962-965.)  Instead, as noted above, under section 1170.126, subdivision (f), "the [*trial*] *court shall determine* whether the petitioner satisfies the criteria in subdivision (e)."  (Italics added.)  There is no provision for the People to plead or prove anything, the burden falls on the trial court to make the determination whether a defendant meets the prima facie criteria for recall of sentence.

In rejecting an interpretation that a defendant becomes presumptively entitled to resentencing absent proof of dangerousness beyond a reasonable doubt, *Kaulick*, *supra*, 215 Cal.App.4th 1279, notes it is determinative that the drafters omitted any requirement for the pleading and proof of dangerousness in the latter statute.  (*Id*. at p. 1303, fn. 26; see *id*. at pp. 1298-1299, fn. 21 [dictum; "[b]y its terms" § 1170.126 does not require pleading and proof of circumstances rendering commitment offense ineligible]; accord, *White*, *supra*, 223 Cal.App.4th at p. 527 [no pleading and proof requirement under § 1170.126]; *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1058-1059, petn. for review denied July 9, 2014, S218914 (*Blakely*) [same]; *People v. Osuna* (2014) 225

23

Cal.App.4th 1020, 1033, petn. for review denied July 9, 2014, S218183 (*Osuna*) [same]; *Bradford*, *supra*, 227 Cal.App.4th at pp. 1333-1334 [same].)  Therefore, section 1170.126 does not of itself support defendant's claim that his ineligibility was subject to pleading and proof in the proceedings underlying the commitment offense of intending to cause great bodily injury.

We also reject defendant's claim that the trial court was precluded from relying on the record of conviction, including our prior opinion and trial transcript, to determine eligibility under section 1170.126.  Under the Three Strikes law generally, a trial court may look to the whole record of a prior conviction to determine whether the facts meet the definition of a strike, including looking to a prior appellate decision.  (See *People v. Woodell* (1998) 17 Cal.4th 448, 454-457 (*Woodell*) [foreign state appellate opinion used to show defendant's prior conviction qualified as a strike under California law because it showed he personally used a deadly weapon].)  " '[A]ppellate opinions, in general, are part of the record of conviction that the trier of fact may consider in determining whether a conviction qualifies under the sentencing scheme at issue.' [Citation.]" (*People v. Trujillo* (2006) 40 Cal.4th 165, 180-181 (*Trujillo*), quoting *Woodell*, *supra*, 17 Cal.4th 448, 457.)  A trial court may look not only to the record of conviction for a particular crime when determining the facts underlying the offense for purposes of sentencing on a subsequent conviction, but to other records which contain sufficient procedural protections to ensure their reliability.  (See *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1526-1527, 1531-1532 [Fourth Dist., Div. Two] [preliminary hearing transcript on

24

prior offenses supported determination prior conviction was a serious felony]; *Trujillo*, at pp. 177-180 [same].) We see no reason why the Act would change this rule. (Accord, *Brimmer, supra*, 230 Cal.App.4th at pp. 800-801 [reliance on unpublished opinion in prior appeal]; *White*, *supra*, 223 Cal.App.4th at p. 525 [reliance on record of conviction including information, pretrial motion, and closing argument]; *Blakely*, *supra*, 225 Cal.App.4th at pp. 1058-1063 [a trial court may examine relevant, reliable, admissible portions of the record of conviction to determine disqualifying factors; *Bradford*, *supra*, 227 Cal.App.4th at pp. 1336-1338 [reliance on record of conviction but may not consider new evidence outside of the record of conviction].)

If the prior opinion does not sufficiently establish the facts, "the defendant, who suffered the conviction and took the appeal, would know of and be able to challenge any material flaws or omissions in the opinion." (*Woodell*, *supra*, 17 Cal.4th at p. 457.) Indeed, defendant makes no claim that our prior opinion misstated the facts or that the trial court misinterpreted the facts in our prior opinion. In such circumstances, we see no reason why the trial court's use of our prior opinion and the trial transcripts to determine the facts was improper. The opinion clearly indicates defendant intended to cause great bodily injury to the victim, and defendant does not argue otherwise on appeal. The record of defendant's conviction shows that defendant threatened to kill M., inflicted injuries upon her, choked her with his bare hands and strangled her with a scarf, causing her to temporarily lose consciousness. Thus, the record of defendant's conviction supports a finding defendant intended to inflict great bodily injury upon the victim.

25

Accordingly, we find the trial court's reliance on the record of conviction, including this court's prior opinion in defendant's appeal from his original judgment and the trial transcripts, was proper. (*Trujillo*, *supra*, 40 Cal.4th at pp. 180-181; *Woodell*, *supra*, 17 Cal.4th at p. 457.)

D.     *Right to Jury Trial*

We also reject defendant's assertion that the trial court's reliance on "matters outside the fact of [defendant's] conviction," in other words using a disqualifying factor not pled and proved to the jury, violated his constitutional rights to due process and a jury trial under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny.

Considered in conjunction with each other, the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution require that each element of a crime or sentence enhancement be proved to the jury beyond a reasonable doubt. (*United States v. Gaudin* (1995) 515 U.S. 506, 509-510; *In re Winship* (1970) 397 U.S. 358, 364; *People v. Jones* (1999) 75 Cal.App.4th 616, 631.) *Apprendi* states that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. 466 at p. 490.) Subsequently, in *Blakely v. Washington* (2004) 542 U.S. 296, the high court clarified that the "prescribed statutory maximum" for purposes of the right to a jury trial is not necessarily the maximum penalty provided by statute for the crime; rather, it is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." (*Id*. at

26

p. 303.) Thereafter, the high court in *Cunningham v. California* (2007) 549 U.S. 270, explained that, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Id*. at p. 281.)

Of course, constitutional requirements supersede statutory language. Defendant, however, misapplies *Apprendi* and its progeny to resentencing petitions under section 1170.126. The determinations required under section 1170.126 are not factors justifying enhancing a defendant's sentence beyond the statutory maximum. (See *Kaulick*, *supra*, 215 Cal.App.4th at pp. 1302-1304.) As such, "the United States Supreme Court has already concluded that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws." (*Id*. at p. 1304, citing *Dillon v. United States* (2010) 560 U.S. 817, 828-829 (*Dillon*).) "The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues. Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt." (*Kaulick*, at pp. 1304-1305.)

The resentencing provisions under section 1170.126 are akin to a hearing regarding "downward sentence modifications due to intervening laws" (*Kaulick*, *supra*,

27

215 Cal.App.4th at p. 1304; see also *Dillon*, *supra*, 560 U.S. at p. 829), and therefore *Apprendi* and the limitations of the Sixth Amendment do not apply to resentencing determinations. (Accord, *Brimmer, supra*, 230 Cal.App.4th at pp 804-806; *White*, *supra*, 223 Cal.App.4th at p. 527; see also *Osuna*, *supra*, 225 Cal.App.4th at p. 1039 ["*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under [section 1170.126]"; *Blakely*, *supra*, 225 Cal.App.4th at p. 1060 [same].) "A finding an inmate is not eligible for resentencing under section 1170.126 does not increase or aggravate that individual's sentence; rather, it leaves him or her subject to the sentence originally imposed." (*Osuna*, at p. 1040; *Blakely*, at p. 1061.) A trial court's determination that a defendant is ineligible for resentencing pursuant to section 1170.126 does "not increase the penalty to which [a] defendant [is] already subject, but instead disqualifie[s] [a] defendant from an act of lenity on the part of the electorate to which [a] defendant was not constitutionally entitled." (*Osuna*, at p. 1040; *Blakely*, at p. 1062.)

Here, defendant sought relief under the retrospective portion of the Act which is the result of an act of lenity and, therefore, does not entitle defendant to a jury determination of eligibility. The trial court adequately reviewed defendant's record of conviction in determining defendant was ineligible for resentencing. The trial court acted appropriately in rendering its own findings in denying defendant's petition.

III

DISPOSITION

The order denying defendant's petition for a recall of his life sentence and for resentencing as a second strike offender under the Act is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>RAMIREZ</u>
                      P. J.

We concur:

<u>McKINSTER</u>
        J.

<u>RICHLI</u>
        J.

29